Your Honor, before I begin being mindful of your directive regarding watching my own clock, may I try to reserve two minutes for rebuttal? Yes. Thank you. May it please the Court, my name is Jamie Corning with Davis Wright Tremaine, appearing as appointed counsel for the appellant, Mike Murphy. Counsel, on behalf of the Court, we thank you for accepting this case and appearing on behalf of the appellant. Thank you, Your Honor, my pleasure. There are two claims at issue in this case, a due process claim and an equal protection claim. And the District Court has now dismissed both of those claims under the screening procedure articulated in 1915A. I'd like to address both claims, beginning with the due process claim. The District Court's dismissal of the due process claim was fundamental error for two reasons. First, the District Court improperly relied on Martinez's screening report to make critical findings of fact, which it then used as a basis for dismissal of the due process claim. The second error was even had the District Court proceeded to analyze whether or not there was an oral agreement between the appellant, Mr. Murphy, and the State, it could not do so, it could not resolve that question at this stage of the case. First, Your Honor, I'd like to address where the due process and liberty interests arise from. Mr. Murphy has not alleged that there is a liberty interest arising from the memorandum of understanding between the various State agencies. He made that clear in his original complaint. This Court acknowledged it for the first time when this case was previously up on appeal. It was acknowledged in Magistrate Boyle's order directing a Martinez report. Mr. Murphy has never alleged it. He has been transparent about this in his complaint. The State acknowledges the same in its briefing. However, the District Court has now twice analyzed whether or not there is a liberty interest arising from this MOU. It has determined that there is not, and it has dismissed his claim on that basis. But didn't it also look to see whether there's some kind of an oral settlement agreement or look for existence of anything else? Magistrate Boyle's – I couldn't find it. Sorry. That was my understanding of the record. Please correct me if I'm wrong. I thought that – I thought there was an implication that because there had been a settlement conference, there would be something on record and that they couldn't find it. Did I get that wrong? It's not clear from the allegations, Your Honor. There – so let me begin with Magistrate Boyle's order, which directed the Martinez report. He acknowledged that the State should investigate whether or not there was any sort of agreement. The District Court did not address that in its order. As to where and when that conversation took place, what we're calling the mediated agreement, between Mr. Murphy and the State, which led to the State's commitments that it made that gives rise to the liberty interest, it's not entirely clear when that arose and whether that was – Counsel, isn't that a problem, though, because under Rule 11, isn't it the plaintiff's responsibility to set forth sufficient facts that there can be a plausible claim under Rule 8? So under Rule 8, Your Honor, absolutely. The only requirement is that Mr. Murphy set forth a short, plain statement showing he is entitled to relief. Well, there's more than that under Twombly and Iqbal. You have to go a little further than that now, and that's the difficulty I'm having. Even if we disregard the Martinez report and just look at the allegations in the complaint, all he says is there was a verbal agreement. I don't know if that gets him where he needs to be in terms of stating a plausible claim. And I'm somewhat confident that that may be why the District Court thought this case should be screened out. So, Your Honor, let me address the plausibility standard under Twombly and Iqbal. Your Honor is correct. I think that a naked allegation of an oral agreement with nothing else might not be sufficient at the pleading stage. That's not what we have here. Mr. Murphy, it's true, did allege a particular date on which this mediation occurred, and that's set forth on ER 91. There is – admittedly, we have the record that we have. If the Court looks to ER 90, the page preceding it, it's numbered identically. The contents appear to be identical except for the statement about the date the mediation occurred. I would interpret that as being some ambiguity about the date on which the mediation occurred. What we do know from looking at the evidence that was introduced as exhibits to Mr. Murphy's complaint was statements made on the record by Deputy Attorney General Paul Panther at an October 21, 2003 hearing in which he alludes to specific conversations that he had with Mr. Murphy, and those can be found on ER 129, 131, and 132. After setting forth his legal position, Mr. Panther advised the Court, I'm going to propose what I think is a reasonable solution to this whole thing. He discusses his client's, quote, counterproposal. He describes the State of Idaho's lack of familiarity with the transfer process and says, quote, he, meaning Mr. Murphy, and I have both had a little bit of discussion about who, what needs to be done, and what shouldn't be done, and frankly, I'll admit that I think there was a mistake made in possibly both his, the way he applied for the transfer, and the process that came about as a result of that application. So Mr. Panther's at least alluding to conversations that he had with Mr. Murphy. He's presenting those on the record to the Court. He's describing the process that the parties went through, and then he's inviting Mr. Murphy to submit a new application for transfer, presumably according to the agreement that they reached. I think that's what differentiates. Did he submit a new application? He did. In fact, not only did he submit a new application, the Idaho District Court, which was where this proceeding was at the time, actually stayed to the habeas proceeding, specifically to allow him to submit that new application, to have it be processed, and only then resumed the case. The references that you're making to the on-record allusions to the earlier conversations, I didn't find persuasive because I don't think it's contested that he raised this issue. He wanted to be transferred to Canada. The State confessed. That's a, I don't mean that in a pejorative sense. Acknowledged. It really hadn't done this before. It didn't have procedures before. And so in terms of a catalyst, I think it's pretty clear by my read of the record that Mr. Murphy was the catalyst for developing such a plan. But I'm still looking for what Judge Rawlinson's looking for, which is where did they say make any specific promise that his application would be treated any differently than anybody else's? Well, I don't think that there's a promise that his application would be treated differently. I think Your Honor is absolutely correct. Well, if that's the case, then where does the interest arise? Where does he have a protected interest? Well, the interest is in the oral agreement that he reached with the State. And so, Counsel, does that oral agreement differ from the sort of written protocols that were then put in place to control how these applications would be handled? As far as I know, Mr. Murphy's claims about the nature of the oral agreement largely mirror what ultimately ended up in the memorandum of understanding several years later. There may be some minor differences, and I'm not sure what those are. So what is, going back to the very first question Judge Rawlinson asked you, where's your client's protected interest? It's not arising from the written agreement. So I think that means it's something else or something different. He's alleging that he was given some other guarantee. What is that? Well, I think the guarantee, Your Honor, was you have a habeas proceeding. You've alleged that the State's procedures are inadequate. We're going to adopt some procedures, and here's what they will be, and we will afford you this relief. Go ahead and apply pursuant to these procedures, and we'll process your application in accordance with them. As a result, we're now going to dispose of that claim, address the remainders of your claim under the habeas proceeding. Those claims regarding an entitlement to a transfer were found inadequate, proceeding dismissed. But ultimately, the resolution of his procedural objections to the process were resolved through this agreement that he reached with the State. And ultimately, those may have been memorialized, in some cases inaccurately in the MOU, but that fundamental agreement between him and the State to resolve the procedural dispute is what gives rise to the liberty interest. Okay. I don't think – it sounds like that I've read the record consistently with the way you've just described it, just FYI. So if you've got something else that you think I'm missing, it's an invitation on my part to let me know. But I think that what you just described is what I got from this record. And I think that's the record that we have, Your Honor. Okay. So what's your best shot about an answer to Judge Rollenton's question about where does your client's interest arise? I think it has to be the conversations that he had with the State and what the State promised him that they would do in response to his application. Okay. And all we have, Your Honor, is allusions to it on the record, which frankly is a lot more than you usually get with an oral agreement. He's offered the best that he can in terms of corroboration. But the difference is even if this was resolved through mediation, there would be some indication in the court records that something had taken place. Usually if there's a mediation, there's a report to the court or something. And that's the thing that troubles me the most, is there is nothing in the public record that we could take judicial notice of that would support the notion that there was a verbal agreement. And I'm not, just to follow up on that so you have the benefit of both before you answer, I'm not sure, Honor Rehman, what else the district court would do since the district court requested the Martinez report. I think the only, well, let me address the procedural and then Judge Rollenton's question. Sure. I think procedurally if the case is remanded, further screening under 1915A should be dispensed with. The party should be entitled to take discovery, including a deposition from Mr. Panther about the conversations between him and Mr. Murphy and what statements were made that could give rise to this oral agreement. As to the question of whether or not the mediation itself appears on the transcript, Mr. Murphy is a pro se. He is doing the best that he can. He is using the language that he is familiar with. We lawyers use the terms mediation and hearing. They carry particular meanings with them. It's not at all clear to me that that's the same meaning he is ascribing to them. I think he's trying to describe the process and doing the best that he can. We have to use your time, so we'll give you a couple minutes for rebuttal. Thank you, counsel. Thank you. May it please the Court. Leslie Hayes, Deputy Attorney General for the State of Idaho, representing the defendants in this matter. When this Court reversed this case and remanded back to the District Court on the last oral argument that we had and appeal we had, it found that Murphy could potentially plead an equal protection in a due process claim, and nowhere did it actually find that Murphy had met that minimum pleading standards. Murphy was provided guidance by the District Court to amend his complaint. He did amend his complaint, and the Court found that he had not effectively pled that equal protection claim again, repeating all the same allegations he had previously made, and that he effectively had pled himself out of the due process claim. Counsel, would you agree that the District Court, in screening the case out, relied on the memorandum of understanding and addressed that? Would you agree? I would . . . The District Court cited to the memorandum of understanding. I'm not in the District Court's head, so I'm not sure whether the District Court looked at anything beyond the memorandum of understanding. Well, let me ask it this way. Did the District Court in any way resolve the allegation that there was a verbal agreement? I believe the District Court did by stating that there's no evident . . . The District Court didn't expressly state that there was no evidence of a verbal agreement, but based on the Martinez report, the District Court concluded that the only evidence of an agreement was the memorandum of understanding, and so it screened the memorandum of understanding under the liberty interest of the due process clause because that was the only agreement that was available to determine whether the due process claims were a viable claim or not. Do you think that adequately addressed the allegations in the complaint? You know, I find the District Court's decision problematic because it is not as thorough as I would like it to be. That being said, I have full faith and confidence in our District Court judges that they adequately reviewed the record before issuing that decision. So on E.R. 4, counsel, forgive me for interrupting you. On E.R. 4, the judge says in the first paragraph, the court concludes that no binding agreement exists from which a liberty interest could arise, but then it's a little problematic, I think, or what you're referring to is on E.R. 5. The explanation for that is it's abundantly clear that the MOU is not a consent decree, right? So that wasn't . . . Well, it's also . . . So the first sentence, I've indicated the second sentence, it's abundantly clear the MOU is not a consent decree, and then the very next sentence, as a result, plaintiff has failed to state a claim on Palm Ridge Relief may be granted. So there is an inference. I'm just trying to play devil's advocate so you have a chance to respond since this is your only time at the microphone. There's an inference that, I think, arguably, that that's a limitation. It's a closed set. In other words, that the judge only considered the MOU. What is your response to that? Well, the judge opens up by saying that he considered the Martinez report and he considered plaintiff's response. I have to assume that that is a short list of what was considered because the judge obviously would also have to consider the amended complaint. So beyond what the judge says they considered, I can't speak what the court considered. I do agree that it's problematic that the judge jumps directly to the MOU in the decision, but given that there is a lack of evidence within the pleadings and within the underlying record that would be appropriate for judicial notice, I'm not sure what the judge is supposed to analyze other than the MOU since there's no evidence that there was any other agreement. Well, the judge could have specifically set forth the allegations that were in the amended complaint and said why those were inadequate. That's what normally occurs. Correct. And so the judge did issue an order that's in our further excerpts of record on remand that outlined what the basis of Mr. Murphy's claims were in the deficient pleadings that were previously appealed to this court and outlined the standards of law that would be required. Reading only the dismissal order in isolation without reading the other underlying orders that the court issued in the interim before getting to dismissal I think that that tells the fuller story of what the district court was looking at when that final dismissal order came through. The first, and this is for the benefit of both counsel, the first line, as I've indicated in the judge's order, indicates that he's considered the Martinez report. The first paragraph in the Martinez report, maybe it's the second paragraph in the Martinez report, says after a thorough review of relevant documents in the state defendant's state court case file, including the unofficial transcripts provided by Murphy, the defendant concludes there's no binding agreement. I'm paraphrasing, but it seems to me to be a fair inference that you're making that because the judge reviewed the Martinez report, he's considered that the state had made a thorough review, including transcripts. Yes, I think that's a fair inference. Included within the Martinez report, as this court is aware, is the docket sheet. In order to conclude that based on that docket sheet and the underlying transcripts that were provided by Mr. Murphy, both on appeal and connected to his complaint, that there was a mediated agreement in front of Judge Bradbury, we would have to take several improbable mental leaps to get to that mediated agreement. What's improbable about that? I started my career as a state court judge, and I can't say that this would be the first time the parties came back, thought they had a deal, even put it on record, and then came back later and said, yeah, but we also talked about that other matter and didn't capture it in the settlement agreement. That's what's missing is any sort of indication that there was a resolution reached in this matter between the parties. We have Judge Bradbury mediating this potential agreement between the parties, and then we have to assume that Judge Bradbury doesn't require the parties reduce that to a transcribed record or reduce it to writing what the understanding of that agreement was. We then have to take the mental leap that Judge Bradbury dismisses Mr. Murphy's complaint on our petition for habeas corpus after Mr. Murphy is making the exact same complaints about the process that was utilized then that he's making now, namely that his institutional record is incorrect and he was not given an opportunity to correct it before the governor decided his application. Well, that is his allegation. His allegation is that something that they agreed with me orally didn't make it into the record, and so are you essentially falling back on Twombly and saying that's implausible? Yes, but that's the same allegation he made in the habeas petition. If you read through the hearing transcripts and the judge's outline in dismissing the habeas petition of what his arguments are, that's one of the precise arguments he makes. So we have Judge Bradbury now mediating agreement and dismissing a claim knowing that the state potentially violated that agreement, and if the agreement exists, Judge Bradbury also walked through a thorough protected liberty interest argument within his final dismissal order. And so now we have a judge that knows a liberty interest exists and ignores it and then still dismisses it, and that's the improbability that I think is within Mr. Murphy's complaint when you read the record as a whole. Here's the problem with the argument, and, again, I just want to give you an opportunity to respond. The Martinez report goes on to say to the extent the MOU may be construed as a binding agreement, which the state defendants believe it is not, it vests no rights with Murphy alone. What the Martinez report I don't think does is to circle back to the folks who were there and to say that these people have declared, affirmed that there was no other separate agreement, right? Oral agreement. It doesn't, but that would have triggered the precise error that the appellant is arguing for now, which is that it would have triggered a need for a notice to pro se litigants and a summary judgment analysis because that would be evidence. That would be testimony from the individuals that were there. So you're saying that goes beyond the 1915A screening process? Correct. And, you know, I was not part of the Martinez report process, so I do not know why that decision was made by Mr. Burnett and Mr. Kubinski, but, you know, knowing both those individuals personally, I have to confess that it is likely because they wanted to provide the judge with what it needed to do a 1915A screening. Sure. Absolutely. I acknowledge that, and there's no, I'm not dissing anybody. What I am is just trying to grapple with the obvious response that you're going to hear in a minute, which is that I think essentially he thinks this is just not subject to screening because there's a fact issue there. And I think you've addressed that. Okay. Thank you. Thank you. All right. So do you take issue with the fact that the information that was provided in the Martinez report went beyond screening purposes and went into the fact realm? Do you take issue with that? I don't personally take issue with that. I don't find it problematic because there was sufficient proper judicial notice documents that were provided that could support the fact issues that were contained within the Martinez report. But do we do that at 1915A? Take judicial notice? Do we screen for facts? If there's a question of fact, doesn't it go forward? It does, and I don't think there is a question of fact in this instance. Oh, after you take judicial notice. After you take judicial notice, I think that it becomes abundantly clear that Mr. Murphy did not meet the minimum pleading standards. All right. Thank you, counsel. Thank you. Rebuttal. Let's put two minutes on the clock. I'll try to address a couple of points here. First, the allegation that it shows that Mr. Murphy had no liberty interest because Judge Bradbury ultimately dismissed the case. The principal liberty interest that Mr. Murphy is concerned with is the fact that the state keeps losing his applications for transfer, keeps refusing to process them, keeps declining to issue new ones, in one case held onto it for seven years until the eve of this Court's prior hearing in this case. All Mr. Murphy is asking for is an opportunity to timely resubmit applications. For example, when Idaho elects a new governor or when there is a change in Attorney General or other circumstances might change that might cause the state to reconsider, that's the opportunity that he is being denied. All he's asking for is an opportunity to resubmit. But he wouldn't have a liberty interest in that unless there is some document or some agreement that gives him that. So we're circling back to under what basis can he assert those rights? And, Your Honor, my only point was that that interest had not yet been violated by the time Judge Bradbury dismissed because the two years had not yet run. And as to that point and, Judge Christian, your point regarding the fair inferences that the Court could have drawn from the Martinez report, what the Martinez report says is from the state's perspective we found no evidence of this agreement, which, again, is not surprising if there's an oral agreement and you haven't interviewed the witnesses. From that statement, the district court concluded no agreement could possibly have existed. But I think we've covered that. Okay. And that's the fundamental concern. The issue here does concern. It is a question of fact. When you're talking about a complaint and an allegation of an oral agreement, Mr. Murphy is not obligated to produce documentary evidence of an oral agreement. He's not obligated to introduce overwhelming evidence that would justify summary judgment in his favor. It's a question of plausibility. Is it plausible that he had a conversation with Paul Panther? Yes. Is it plausible that conversation led to specific promises? Yes. We know that because there's at least some allusion to it on the record. Is it plausible that that gives rise to a liberty interest? Yes. So the fundamental question is what did Mr. Murphy discuss with Mr. Panther? What did they agree on, if anything? What promises were made? There's nothing in the record to show what the content of that conversation was. There's nothing in the record to show when and where that conversation took place. That's evidence. It's a question of fact. It deserves a trial. All right. Thank you, counsel. Thank you. Ms. Murphy, again, thank you for accepting this case and appearing pro bono. We really appreciate it. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court. The next two cases, Sherrod v. Safeco Insurance Company and Fratzke v. Montana Fish, Wildlife and Parks, have been submitted on the briefs. The final case on calendar for argument today is Knight and Knight v. Wells Fargo. Thank you.
judges: Rawlinson, Christen, Freudenthal